**KLEIN v. HERRICK, Regional Director of National Labor Relations Board.**

District Court, S. D. New York.

Sept. 17, 1941.

William Karlin, of New York City, for plaintiff.

A. Norman Somers, of Washington, D. C., for National Labor Relations Board.

RIFKIND, District Judge.

The defendant, Regional Director of the National Labor Relations Board, has been ordered to show cause why an injunction should not issue, pendente lite, restraining the defendant "from carrying into effect or taking any proceedings under the Decision and Direction of Election of the National Labor Relations Board, dated August 8, 1941 * * * and from in any manner conducting any investigation or inquiry or determination or election among the production employees of Presto Recording Corp. during the term of the collective labor agreement between plaintiff Union and said Presto Recording Corp."

Defendant responded by cross motion to dismiss the complaint on two grounds:

(1) That the court is without jurisdiction of the subject matter; (2) that the complaint fails to state a cause of action entitling plaintiff to equitable relief.

An application for a stay pending the hearing and disposition of plaintiff's motion was denied. On its own initiative, however, defendant has refrained from taking any action to carry the board's direction into effect.

The complaint discloses that the controversy has its root origin in the rivalry of two unions for the patronage of the employees of Presto Recording Corp. Sometime "prior to March 9, 1939", Radio Union Local B–1010 of the International Brotherhood of Electrical Workers, affiliated with the American Federation of Labor (hereinafter called plaintiff union), was selected as the exclusive bargaining agent of the employees of Presto Recording Corporation (hereinafter called the employer). The selection was effected by means of an election by secret ballot conducted by defendant under Section 9(c) of the National Labor Relations Act, 29 U.S. C.A. § 159(c).

On March 9, 1939, an agreement was made between the employer and plaintiff union "for and in behalf of the employees, now employed and hereafter employed by the employer". The agreement specified the working arrangements which were to prevail at the employer's plant, required the employment of members of plaintiff union exclusively and was to remain in effect for óne year and be subject, at the employer's option, to renewal for an additional two year period. The option to renew was exercised and the contract extended to March 8, 1942.

In May, 1940, Local 430 of the United Electrical, Radio and Machine Workers of America, affiliated with the Congress of Industrial Organizations (hereinafter called rival union) petitioned the defendant, under Section 9(c) of the National Labor Relations Act, for an investigation and for certification of a collective bargaining agent for the employees of the employer. This application was dismissed on June 29, 1940.

On April 30, 1941, the rival union renewed its petition. After hearing, of which plaintiff union had notice and at which it appeared, the National Labor Relations Board, on August 8, 1941, granted the petition and made the direction of which plaintiff complains. This direction ordered an election by secret ballot among the employees who were on the payroll on June 30, 1941, the choice to be of plaintiff union, the rival union, or neither.

The complaint asserts that this direction is unlawful and void; that it deprives plaintiff of its property in violation of the National Labor Relations Act and the Constitution; that the injury to plaintiff is irreparable; and that plaintiff is without remedy at law. The specific property alleged to be jeopardized by the action of defendant is plaintiff's contract with the employer.

The character of the harm which may befall plaintiff union as a result of defendant's action is not identified in detail in the complaint. But these inferences may be drawn therefrom: that the election may result in a victory for the rival union; that, thereupon, defendant may certify the rival union as bargaining agent for the employees; that the employees may cease to pay dues to plaintiff union; that the employer may, in violation of its agreement, refuse to discharge such recalcitrant employees; that the rival union may seek to negotiate with the employer; that the employer may accede to the request for such negotiations; that such negotiations may result in a contract modifying the existing contract by eliminating the provision requiring employees to be members of plaintiff union; that the courts may hold that such modification is valid and binding. In order to sever this chain of possible consequences, plaintiff union asks the court to restrain the defendant from carrying out the direction of the National Labor Relations Board. The moving affidavit adds nothing of substance to the allegations of the complaint.

■ At the threshold we are met by the challenge to the court's jurisdiction over the subject matter. The jurisdiction conferred upon the district court by Section 24 of the Judicial Code, 28 U.S.C.A. § 41, is manifestly broad enough to encompass the subject matter of this controversy unless the jurisdiction has been curtailed by Section 10 of the National Labor Relations Act, 29 U.S.C.A. § 160. In support of the contention that Section 10 is restrictive of the broad grant of jurisdiction contained in Section 24 of the Judicial Code, it is argued that the act is a complete and self-contained system providing its own means of judicial review of the Board's actions; that such review is

limited to the Circuit Courts of Appeal and the Court of Appeals of the District of Columbia; and the following authorities are cited in aid of the argument: Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Newport News Shipbuilding & Drydock Co. v. Schauffler, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646; E. I. DuPont De Nemours & Co. v. Boland, 2 Cir., 85 F.2d 12; Heller Bros. Co. v. Lind, 66 App.D.C. 306, 86 F.2d 862, certiorari denied, 300 U. S. 672, 57 S.Ct. 611, 81 L.Ed. 878; Beman v. Independent Workers of Clayton Mark & Co., 7 Cir., 88 F.2d 59, certiorari denied, 301 U.S. 707, 57 S.Ct. 941, 81 L.Ed. 1361; Bradley Lumber Co. v. N.L.R.B., 5 Cir., 84 F.2d 97, certiorari denied, 299 U.S. 559, 57 S.Ct. 21, 81 L.Ed. 411.

Furthermore, it is contended by defendant that the direction of election is an intermediate step in a pending and undetermined investigation and is not subject to review, citing: N.L.R.B. v. International Brotherhood of Electrical Workers, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354; N.L.R.B. v. Falk Corp. 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396.

Even were the matter before the court not a mere direction of election but an actual certification, the defendant contends, there would still be no power in the district court to review such certification. The defendant maintains that under the exclusive procedure of the National Labor Relations Act, a certification under Section 9(c) can only be reviewed through the procedure outlined in Section 9(d) of the Act. Under Section 9(d) a certification issued pursuant to Section 9(c) is not subject to review except when the facts so certified have become the basis, in whole or in part, of an order under Section 10(c), and in such instance the certification under Section 9(c) becomes subject to review only in a proceeding in the Circuit Court of Appeals or the Court of Appeals of the District of Columbia, paragraph (e) or (f) of Section 10. American Federation of Labor v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; N.L.R.B. v. Falk Corp., supra. Corroboration for this view is contributed by the legislative history of the National Labor Relations Act.[1]

Direct authority on the question of the court's jurisdiction is meager. The United

[1] House Report No. 1147, 74th Cong., 1st Sess., p. 23: As previously stated in this report, the efficacy of Public Resolution 44 has been substantially impaired by the provision for court review of election orders prior to the holding of the election. Section 9(d) of the bill makes clear that there is to be no court review prior to the holding of the election, and provides an exclusive, complete, and adequate remedy whenever an order of the Board made pursuant to section 10(c) is based in whole or in part upon facts certified following an election or other investigation pursuant to section 9(c). The hearing required to be held in any such investigation provides an appropriate safeguard and opportunity to be heard.

Senate Report 573, 74th Cong., 1st Sess., p. 14: Section 9(d) makes it absolutely clear that there shall be no right to court review anterior to the holding of an election. An election is the mere determination of a preliminary fact, and in itself has no substantial effect upon the rights of either employers or employees. * * * But if subsequently the Board makes an order predicated upon the election, such as an order to bargain collectively with elected representatives, then the entire election procedure becomes part of the record upon which the order of the Board is based, and is fully reviewable by any aggrieved party in the Federal courts in the manner provided in section 10. And this review would include within its scope the action of the Board in determining the appropriate unit for purposes of the election. This provides a complete guarantee against arbitrary action by the Board.

At 74 Congressional Record 7957:

Mr. Couzens. The Senator said that Resolution 44 was ineffective. Will he tell us before he concludes why Resolution 44 was ineffective?

Mr. Walsh. It was ineffective, as I think I stated, because of appeals to the courts. In cases where attempts have been made to hold elections the claim has been made that the Board had no legal authority; the cases have been brought into court, and they are in the courts and undecided.

* * *

Mr. Couzens. Would the passage of the pending bill remove the appeals to the courts?

Mr. Walsh. Yes; it would, because it limits appeals. It provides for review in the courts only after the election has been held and the Board has ordered the employer to do something predicated upon the results of the election.

States Supreme Court has expressly withheld its opinion until such time as a controversy is there presented which compels its decision. A. F. of L. v. N.L.R.B., 308 U.S. 401, 404, 412, 60 S.Ct. 300, 84 L.Ed. 347. In that opinion the court said (308 U.S. at page 404, 60 S.Ct. at page 302): "The single issue which we are now called on to decide is whether the certification by the Board is an 'order' which, by related provisions of the statute, is made reviewable upon petition to the Court of Appeals of the District, or in an appropriate case to a circuit court of appeals. The question is distinct from another much argued at the Bar, whether petitioners are precluded by the provisions of the Wagner Act from maintaining an independent suit in a district court to set aside the Board's action because contrary to the statute, and because it inflicts on petitioners an actionable injury otherwise irreparable." And at page 412 of 308 U.S., at page 305 of 60 S.Ct., the court continued: "The Board argues that the provisions of the Wagner Act, particularly § 9(d), have foreclosed review of its challenged action by independent suit in the district court, such as was allowed under other acts providing for a limited court review in Shields v. Utah Idaho C. R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111, and in Utah Fuel Co. v. National Bituminous Coal Commission, 306 U. S. 56, 59 S.Ct. 409, 83 L.Ed. 483; cf. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. But that question is not presented for decision by the record before us. Its answer involves a determination whether the Wagner Act, in so far as it has given legally enforceable rights, has deprived the district courts of some portion of their original jurisdiction conferred by § 24 of the Judicial Code, 28 U.S.C.A. § 41. It can be appropriately answered only upon a showing in such a suit that unlawful action of the Board has inflicted an injury on the petitioners for which the law, apart from the review provisions of the Wagner Act, affords a remedy. This question can be properly and adequately considered only when it is brought to us for review upon a suitable record."

It is helpful to consider that opinion against its historical background and in the light of the developments which emanated from it. The National Labor Relations Board acting in a 9(c) proceeding, certified a certain C. I. O. union as a bargaining representative of all Pacific Coast longshoremen. The American Federation of Labor, acting on the assumption that it was a person "aggrieved" within the meaning of Section 10(f) of the Act, petitioned the Court of Appeals for the District of Columbia to review the Board's order. Relief was denied. A. F. of L. v. N.L.R.B., 70 App.D.C. 62, 103 F.2d 933, 936. The Court of Appeals held that the action of the National Labor Relations Board "was not an order because the Act did not require it to be made in the language of command". Hence it was not reviewable by the court of appeals under Section 10. The court further stated that the action of the Board was reviewable "only * * * in an independent suit in equity commenced in a District Court".

It was this decision which was considered by the United States Supreme Court in A. F. of L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347, quoted above. The decision of the Court of Appeals was affirmed. The dictum with respect to district court jurisdiction was expressly placed in the category of unanswered questions.

The American Federation of Labor thereupon instituted suit in the District Court of the District of Columbia to set aside the Board's certification. The Board moved to dismiss for lack of jurisdiction. The motion was denied. A. F. of L. v. Madden, D.C., 33 F.Supp. 943, 944.

"In the former proceedings between the same parties before the Court of Appeals seeking to have that court review and set aside the same action of the defendants that is complained of in the instant suit (A. F. of L. v. N.L.R.B., 70 App.D.C. 62, 103 F.2d 933, 936) that court held that the certification by the defendants was not an order that could be reviewed by that court, and this action of the Court of Appeals was affirmed by the Supreme Court. In its opinion, however, the Court of Appeals said '* * * we hold that though the decision here was required by the Act to be made and to be made on the evidence and argument after judicial hearing, and though it was definitive, adversary, binding, final and in this case struck at the very roots of petitioner's union and destroyed its effectiveness in a large geographical area of the Nation, it was not an order because the act did not require it to be made in the language of command, and hence is reviewable—as was held in the Shields case, supra (Shields v. Utah

Idaho Central Railroad Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111), and in Utah Fuel Co. v. National Bituminous Coal Comm., 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483, decided Jan. 30, 1939—only in an independent suit in equity commenced in a District Court.' Accordingly the plaintiffs have now brought this suit in equity in this court.

"In view of the above-quoted language of the Court of Appeals, I see no reason why this suit cannot be maintained. As stated by the Court of Appeals, the complaint shows great and irreparable damage to the plaintiff. The particular form of relief to which the plaintiffs may be entitled can be determined in final hearing. There seems to be little ground for the contention that this is a suit against the United States. As to the suggestion that there is a want of necessary parties, the Court of Appeals in a somewhat similar case (Brotherhood of Railway Trainmen v. National Mediation Board, 66 App.D.C. 375, 88 F.2d 757) directed this court to direct the annulment of a certification, although the union which had been certified as the exclusive bargaining agent was not before the court.

"The motion to dismiss should be overruled."

No appeal from this decision was taken.

The history of the controversy which preceded National Labor Relations Board v. International Brotherhood of Electrical Workers, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354, and the events which followed that decision, are likewise instructive. The International Brotherhood of Electrical Workers filed with the National Labor Relations Board a petition for an election under Section 9(c) of the Act. The petition was granted and an election held. The election failed to give either of the rival unions which were in the contest a majority of all the votes cast. The Board thereupon ordered a second election. In accordance with the policy which was then in force the second ballot provided only for a choice between the petitioner's rival, which had received a larger number of votes, and no union. The International Brotherhood of Electrical Workers was thus omitted from the ballot. Upon petition to the Circuit Court of Appeals for the 6th Circuit, 105 F.2d 598, the election was stayed and the Board's direction set aside. On certiorari to the United States Supreme Court that decision was reversed,

308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354, on authority of A. F. of L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347, decided the same day.

Thereupon, International Brotherhood of Electrical Workers instituted suit in the United States District Court for the Eastern District of Michigan for an injunction restraining the holding of the election which deprived it of a place on the ballot. The injunction was granted March 23, 1940, 41 F.Supp. 57. No appeal was taken by the National Labor Relations Board from this decision.

The Madden case and the Electrical Workers case are distinguishable on the facts from the instant application insofar as the sufficiency of the complaint is concerned. They are not distinguishable on the naked question of jurisdiction over the subject matter, that is, jurisdiction in the broadest sense of power to entertain the application. In the Madden case and the Electrical Workers case the Board's action did exclude the complaining union, whereas in the instant case plaintiff union is on the ballot, but these decisions cannot be reconciled with the theory advanced by defendant that the equity jurisdiction of the federal courts has been curtailed by the National Labor Relations Act. These decisions are authorities in favor of plaintiff's position. There are, however, two unreported decisions which support defendant's position: Association of Petroleum Workers v. Harry A. Millis, D.C.N.D. Ohio July 9, 1941;[1] Amalgamated Meat Cutters v. Spreckels, D.C.S.D.Cal. August 3, 1940, affirmed in 119 F.2d 64.

On logical analysis the question crystallizes to this: Assuming that plaintiff has been injured and will be injured by the conduct of defendant and that ordinarily the injury and the threat are of a character which a court of equity would enjoin, is the plaintiff without remedy by reason of a deprivation of the court's jurisdiction by the National Labor Relations Act?

■ Defendant contends that plaintiff is without remedy except within the frame work and through the proceedings contemplated by the Act. At this time clearly plaintiff does not have access to the Circuit Court of Appeals to review the Board's direction. A. F. of L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347. What other remedy is open to it? The course

---

[1] No opinion for publication.

suggested by defendant is that plaintiff abide the results of the election. Thereafter, if the rival union should prevail, it would be obliged to institute proceedings under Section 10(b) in order to compel the employer to negotiate. In such a proceeding plaintiff could, in the Board's discretion, intervene. The order, under Section 10(c), which would follow this proceeding, would be subject to review and plaintiff, if aggrieved thereby, would be a proper party to seek such review, Section 10(f). The defect in defendant's suggestion is that it assumes that the employer would resist the invitation to negotiate with the rival union, thus necessitating the enforcement machinery of Section 10(b). But suppose the employer acquiesces in the certification of the rival union; then no such proceeding would ensue and, on defendant's theory, plaintiff would never acquire access to any court. Nor would plaintiff itself be in a position to institute proceedings under Section 10(b), since a refusal to bargain with it, as a minority union, is not an unfair labor practice, Section 9(a). In other words, the remedy which would be available to an employer or to the certified union would in fact not be available to plaintiff union. It should be noted again at this point that the question now under consideration is not whether the relief demanded should be granted but whether the court is clothed with jurisdiction and power to entertain the application.

■ Continuing on the assumption that plaintiff is being injured by the action of defendant and is threatened with further injury, it seems clear that the National Labor Relations Act has not provided an internal method of review which would now or hereafter fully afford plaintiff redress of the wrong committed. I do not find in Section 10 an express denial of jurisdiction to the district court over a controversy of the character herein described; nor is there any inconsistency between the scheme for review of certain types of action delineated in the Act and the preservation of the court's general equity jurisdiction over controversies not reached by the Act's provisions. I, therefore, find that the court has jurisdiction of the subject matter.

This disposition compels an answer to the question of the sufficiency of the complaint and to the subsidiary question whether plaintiff has made out a case entitling it to a temporary injunction. At this point we must abandon the assumption on which the previous consideration was founded and examine the facts as alleged. For the following reasons I am of the opinion that plaintiff is not entitled to the interlocutory relief for which it prays in its motion and that defendant's motion to dismiss the complaint should be granted:

■ 1. The application is premature. Rochester Telephone Corp. v. United States, 307 U.S. 125, 130, 59 S.Ct. 754, 757, 83 L.Ed. 1147. There the court said:

"In group (1) the order sought to be reviewed does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action. In view of traditional conceptions of federal judicial power, resort to the courts in these situations is either premature or wholly beyond their province. Thus, orders of the Interstate Commerce Commission setting a case for hearing despite a challenge to its jurisdiction, or rendering a tentative or final valuation under the Valuation Act, although claimed to be inaccurate, or holding that a carrier is within the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and therefore amenable to the National Mediation Board, are not reviewable. [Citations omitted.]

"The governing considerations which keep such orders without the area of judicial review were thus summarized for the Court by Mr. Justice Brandeis in denying reviewability of a 'final valuation' under the Valuations Act: 'The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, anything; which does not grant or withhold any authority, privilege, or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation.' United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 309, 310, 47 S.Ct. 413, 414, 71 L.Ed. 651."

The instant case is squarely within the definitions of the quoted case and of the case cited in the quotation. The order herein sought to be reviewed does not of itself adversely affect plaintiff union except perhaps to put it into a state of apprehension. That apprehension is founded on the contingency of future administrative action. Nor does the questioned order

command plaintiff union to do, or refrain from doing, anything; it does not grant or withhold any authority, privilege or license; it does not extend or abridge any power or facility; it does not subject plaintiff union to any liability, civil or criminal; it does not change the plaintiff union's existing or future status or condition; it does not determine any right or obligation. The Board's direction does no more than to set in motion machinery for the ascertainment of a fact. "It is the exercise solely of the function of investigation." United States v. Los Angeles & Salt Lake Ry. Co., 273 U.S. 299, 310, 47 S.Ct. 413, 414, 71 L.Ed. 651. Indeed, the order in the instant case is of a lesser magnitude than the order in the Los Angeles case. There the order was "the formal record of conclusions reached after a study of data collected." Id., 273 U.S. at page 310, 47 S.Ct. at page 414. Here the order constitutes an earlier step. It only directs the collection of the data.

■ 2. The complaint fails to show that any harm or injury has befallen or is about to befall plaintiff's union as a result of the action sought to be restrained. The long series of contingent events which may ultimately result in depriving plaintiff union of the benefit of the contract with the employer is too weak a foundation upon which to erect a claim to injunctive relief. The complaint shows that the contract between plaintiff union and the employer has once been specifically enforced by the courts of New York. Neither the complaint nor the moving papers suggest any reason why that contract should cease to be enforceable by reason of any action taken by defendant or now in its contemplation.

It may well be that should plaintiff union be unsuccessful in the election it may deem it impolitic to press for the enforcement of its rights. That, however, is a consequence which can hardly be said to flow from the order under examination. As a matter of fact, scrutiny reveals that the possible consequences apprehended by plaintiff cannot be the offspring of the Board's order or of defendant's action, but only of the fact which the defendant's action may reveal but not create.

■ It is unnecessary for this decision to pass upon the question whether, should the rival union prevail, it may with the consent of the employer, revise the agreement. That may well await the event before the tribunal having jurisdiction thereof. Nevertheless it may be pointed out that that agreement was made by plaintiff union "for and in behalf of the employees"; that in the first proceedings under Section 9(c) mentioned in the complaint plaintiff union was designated "bargaining representative". In the pending proceedings plaintiff union is acting in its own behalf. It is seeking to prevent the discovery whether the employees desire to continue its agency. That inquiry should not be foreclosed by the fact that under the agreement all employees must be members of plaintiff's union. Non constat, they are members of plaintiff union but desire to vote for a new agent or no agent.

If plaintiff's contentions are right no election can be held until at or after the expiration of the contract. No such limitation on the Board's power is found in Section 9(c). Nor does logic suggest such a limitation by implication. It is sound practice to negotiate a new labor contract before the expiration of the old so as to avoid an interregnum of unorganized labor relations, so prolific of strikes.

If plaintiff's position is sound, either such a salutary practice could not be followed or else the employees must be deprived of the right to a free choice of representatives to bargain in their behalf. There is no compelling reason why either of these nettles need be grasped, especially when both are at odds with the avowed purpose of the Act, to promote industrial peace by affording the employees freedom of choice, the right to "self-organization" and to bargain collectively through representatives of their "own choosing". Section 1, N.L.R.A.

The motion for a temporary injunction is denied. The cross motion to dismiss the complaint is granted.

Submit order.